CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 13 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:04CR00025 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JENNIFER NICOLE KENNEY, | ) | |
| | ) | |
| Defendant, | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly conspiring to distribute, and to possess with intent to distribute, 50 grams or more, of a mixture or substance containing a detectable amount of cocaine base, also called "crack," a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 846. With respect to Count One, the Grand Jury also made a special finding, pursuant to United States Sentencing Guidelines § 1B1.3(a)(1)(B), that it was reasonably foreseeable to the defendant that members of this jointly undertaken criminal conspiracy distributed or possessed with intent to distribute more than 1.5 kilograms of mixtures and substances containing detectable amounts of cocaine base, also called "crack," in and between December 2002 and December 2004. In addition, the Grand Jury made a special finding, pursuant to USSG § 2D1.1(b)(1), that the defendant possessed firearms, aided and abetted another defendant in possessing firearms, or was otherwise responsible for the firearms possession by another defendant as a reasonably foreseeable

-1-

consequence of the conspiracy. On May 4, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that her full legal name is Jennifer Nicole Kenney,[1] that she was born on October 12, 1978, and that she completed high school. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequence of pleading guilty to those charges. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. Defendant stated that she was subject to no other physical or mental condition that impaired her ability to understand the nature of the proceedings being held. Defendant's counsel stated that she had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. She also testified that she had read the plea agreement in its entirety and she had discussed the plea agreement with her counsel before signing the agreement. She stated that she understood the terms of the agreement and that the document presented to the court set forth her agreement with the government in its entirety. The defendant specifically testified that she understood that under the terms of the agreement she was waiving any right to appeal or to collaterally attack her conviction or sentence and that she was waiving her right to have a jury determine beyond a reasonable doubt

---

[1] Her name is styled on the Indictment as "Jennifer Nicole Kinney" but on the plea agreement as "Jennifer Nicole Kenney." The electronic docket displays her name as "Jennifer Nicole Kenney," a/k/a "Jennifer Nicole Kinney." The undersigned did not have defendant spell her last name for the court at the plea hearing.

the facts alleged in Count One, including any facts related to sentencing.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in her agreement with the government, or made any assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offenses with which she is charged are felonies and that, if her plea is accepted, she will be adjudged guilty of such offenses. Moreover, the defendant testified that she understood that she will be required to pay a mandatory assessment of $100, and that, at the discretion of the court, she may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862, for a period of years or indefinitely, as set forth in the plea agreement. The defendant stated that she consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or illegal contraband seized by any law enforcement agency from her possession or from her direct or indirect control. The defendant further stated that she understood that she must submit to the government a complete and truthful financial statement revealing all her assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that she was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of her case.

The defendant was informed that the maximum possible penalty provided by law for the offenses with which she is charged is, in the case of Count One, life imprisonment and a $4 million

fine, together with supervised release. The defendant also was informed that the statutory minimum sentence for Count One is ten years in prison. The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney has given her and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant testified that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend an additional two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility and, finally, a one-level (1) reduction pursuant to USSG § 3E1.1(b) if her offense level is 16 or greater. The defendant stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that the government's exercise of discretion in this regard depends upon her efforts to provide such

-4-

Case 5:04-cr-00025-GEC   Document 176   Filed 05/13/05   Page 4 of 10   Pageid#: 309

assistance. The defendant further stated that she understood that the government would recommend that her sentence of incarceration be fixed between the low end and middle of the applicable sentencing guideline range, but that the court would not be bound by the government's recommendation. The defendant stated that she knew that parole had been abolished. She acknowledged that if sentenced to incarceration she will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless she voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that she understood that if she is adjudged guilty of these charges, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. The defendant also testified that she understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept her plea of guilty to Count One of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived her right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The defendant, Jennifer Kenney, was a crack cocaine supplier in the Front Royal, Virginia area. The following information pertaining to the defendant's distribution of crack cocaine was obtained through interviews, proffers, and LE observations.

Brandi Knight stated that the defendant was a crack cocaine supplier and marijuana supplier. Knight stated that she dealt with the defendant during November 2003 and obtained marijuana from the defendant on approximately four occasions and crack cocaine on approximately fifteen occasions. Knight stated that on occasion the defendant would have powder cocaine which she would cook into crack cocaine.

Derek Lucie stated that he has dealt with the defendant from July 2001 until October 2003. Lucie stated that during that time the defendant dealt in marijuana, cocaine, crack cocaine, and PCP. Lucie stated that during this time he obtained numerous ounces of cocaine and crack cocaine. The majority of what Lucie obtained was crack cocaine.

Michael Cooper stated that when he dealt with Waverly Jordan that some of the deals would happen over at the defendant's residence.

Chance Whittington stated that Waverly Jordan supplied the defendant with cocaine and he knew that the defendant distributed cocaine in the Front Royal, Virginia area.

Andre Frye stated that he has known the defendant since 1998 and that she has been dealing drugs since then, specifically crack cocaine and other narcotics. Frye stated that he knew the

defendant's customers because on occasions he ran for her and received free crack in return. Frye listed twenty such customers and stated that, out of those twenty, at least ten of those sold the crack cocaine they had been supplied by the defendant.

Timmy Jones stated that near the beginning of 2003, while he was over at Danny Whitsell's residence, Waverly Jordan stopped by with approximately two ounces of crack cocaine, which he provided to the defendant and others. After Jordan left, the defendant then sent Andre Frye out to sell the crack cocaine that Jordan had provided for her. Jones also stated that sometime in August 2003 he had stopped by the defendant's residence and Jordan was present inside the residence with the defendant and they were smoking crack cocaine.

Chris Martin stated that the defendant introduced him to her cocaine supplier Mario Holguin.

Sarah Kitts stated that she had given the defendant a ride to re-up and in return the defendant had given her crack cocaine. Upon returning to the Front Royal area, the defendant had dropped off the crack cocaine which she obtained to the Fletcher's residence.

Robert Nickens stated that he and the defendant smoked crack cocaine together on approximately fifteen occasions.

Charlie Hoverter stated that Waverly Jordan supplied crack cocaine to the defendant which she sold to others and she had Andre Frye sell for her.

Randell Freeman stated that he has observed the defendant selling crack cocaine to unknown females that would stop by her residence.

Natasha Markle stated that she had hung out with the defendant on occasion and they would get high together to smoke crack cocaine and marijuana.

Bryan Young stated that the defendant introduced him to Waverly Jordan while over at the defendant's residence. Jordan showed Young how to cook up crack cocaine while over at the defendant's residence. Young stated that ever since the defendant was sixteen he has known her to sell marijuana and crack cocaine. Young stated that he would see her sell to people as they came in and out of her residence.

Christina Danos stated that she and the defendant would get high together smoking crack cocaine and using powder cocaine. Danos stated that the defendant provided the crack cocaine and powder cocaine.

Waverly Jordan stated that he meet the defendant in January 2003, at that time the defendant was distributing crack cocaine, cocaine, PCP, and marijuana through Derek Lucie and Andre Frye. Soon thereafter, the defendant lost her cocaine connect as result of her addiction. Waverly Jordan then began supplying the defendant with cocaine and eventually introduced the defendant to his cocaine supplier, Mario Holguin. Jordan stated that he has observed the defendant distributing various amounts of crack cocaine on over fifty occasions.

LE obtained a search warrant on the defendant's residence on September 5, 2003 and seized marijuana and cocaine. LE also did a series of CI purchases from the defendant on December 23, 2003 and December 29, 2003, purchasing crack cocaine on three occasions.

**PROPOSED FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of her plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Count One of the Indictment and adjudge her guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for July 8, 2005 at 2:00 p.m. before the presiding District Judge in Harrisonburg.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or

recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

5/13/05
Date

-10-

Case 5:04-cr-00025-GEC   Document 176   Filed 05/13/05   Page 10 of 10   Pageid#: 315